UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUSCLEMAKERS, INC.,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION OFFICE OF CAPITAL ACCESS,<br><br>Respondent. | Case No.: 1:23-cv-150 (GTS/DJS) |

PETITION FOR REVIEW OF DECISION AND ORDER OF SMALL BUSINESS ADMINISTRATION OFFICE OF HEARINGS AND APPEALS PURSUANT TO 13 C.F.R. SECTION 134.1211(g)

Petitioner Musclemakers, Inc. ("Musclemakers") by its undersigned counsel, The Towne Law Firm, P.C., hereby petitions the court for review of the Order of the Office of Hearings and Appeals ("OHA") denying Petitioner's appeal of a Paycheck Protection Program ("PPP") loan review decision issued by the United States Small Business Administration, Office of Capital Access ("SBA").

## **PARTIES**

1. Petitioner Musclemakers, Inc. is a Domestic Business Corporation organized and existing under the laws of the State of New York, having a principal place of business at 2080 Western Ave, Suite 115, Guilderland, NY 12084.

2. Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. §633 et. Seq. The SBA's principal place of business is 409 Third Street, Washington, D.C. 20416.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction of this action under 28 U.S.C. §1331 because this action arises under the laws of the United States. This Court also has subject matter jurisdiction under 5 U.S.C. §702.

4. Further, 13 C.F.R. §134.1211(g) provides that final decisions of the OHA upon its review of a final SBA loan review decision "may be appealed to the appropriate Federal district court only."

5. Venue is proper in the Northern District of New York under 28 U.S.C. §1391(e) as Respondent SBA is an agency of the United States and Petitioner's principal place of business is in the Northern District of New York, where a majority of the facts giving rise to the issues to be decided herein occurred.

**STATEMENT OF FACTS**

6. Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), in order to mitigate the economic devastation and mass unemployment caused by the Covid-19 Pandemic ("Covid-19"). Congress created the PPP to help accomplish that critical goal. The PPP authorized the SBA to guarantee hundreds of billions of dollars in loans to small businesses. PPP loans were to be made by private lenders with Congress pledging to forgive these loans provided that, among other things, the borrowers used most of the proceeds to pay employees' wages, rent and lease payments and other operating expenses. *See* 15 U.S.C. § 636(a)(36)(F).

7. When discussing the need for the CARES Act various governmental officials focused upon the need to sustain small and mid-sized businesses, as well as their workers, so that the country

could someday return to its normal, pre-pandemic activities. U.S. Senator John Barraso spoke at the Legislative Session stating, "Our businesses, small businesses, have been hit hard. Our restaurants, **our other businesses that have shut down, that don't have the same resources to come to Washington, DC, and to lobby for aid and support**, are counting on us to create a program those small businesses can get both grants and loans. So, the $350 billion in this program I hope SBA will help dispatch with urgency to those businesses that have complied and **have done their best to keep their employees while also shutting down their business**." LEGISLATIVE SESSION; Congressional Record Vol. 166, No. 59, Page S2025. (Emphasis added).

8. U.S. Senator Chuck Schumer added, "…This bill offers $350 billion in loan forgiveness grants to small businesses to **keep their existing workforce** and to help pay for things like rent, mortgages, and utilities. It provides $10 billion in emergency grants to provide immediate relief for small business operating costs…" LEGISLATIVE SESSION; Congressional Record Vol. 166, No. 59, Page S2027. (Emphasis added).

9. "The PPP is a new loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin., 458 F. Supp.3d 1044, 1050 (E.D. Wis. 2020). The CARES Act became law on March 27, 2020. P.L. 116-136.

10. The CARES Act amended Section 7(a) of the Small Business Act to make forgivable and tax-free Paycheck Protection Program loans of up to $10 million available to "small businesses" and certain larger businesses that fall under North American Industry Classification System (NAICS) Sector 72, which defines "Accommodation and Food Services," such as restaurants.

11. The CARES Act authorized the SBA to issue regulations implementing the PPP without adhering to the "notice-and-comment process" that typically governs agency rulemaking. *See* Pub. L. 116-136, § 1114.

12. Specifically, the CARES Act provided that no later than 15 days after its enactment, the SBA "shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under [the APA]." 15 U.S.C. § 9012.

13. Pursuant to that grant of authority, the SBA promulgated a First Interim Final Rule concerning the PPP on April 15, 2020. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811-17 (Apr. 15, 2020) (codified at 13 C.F.R. pt. 120).

14. This interim rule provided in its background "With the COVID–19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus. These measures, some of which are government-mandated, are being implemented nationwide and include the closures of restaurants, bars, and **gyms**." (Emphasis added). Id.

15. The SBA in its interim rule acknowledged that gyms and fitness centers were being impacted nationwide and mandated by emergency State authority to be completely closed, just like restaurants. However, at no time did the SBA extend the affiliation waiver granted to hospitality venues (NIACS Codes beginning with #72) to likewise govern gyms and fitness centers although this industry was negatively impacted in the exact same fashion, if not more severely.

16. Musclemakers Inc. is the provider of gym and fitness services in New York's Capital Region under the assumed name of Vent Fitness.

17. Musclemakers Inc. was ordered closed and shuttered for public health purposes for over five (5) months during the height of the COVID-19 Pandemic by the State of New York. Even

4

though it eventually was able to reopen, in the ensuing months Musclemakers Inc.'s business took a massive financial hit with total revenue declining 64% and to this day there has been no sign that business will ever return to pre-COVID levels.

18. Unlike restaurants, many of which continued to limp along with take-out sales, gym and fitness venues were ordered completely shuttered in New York with no alternative revenue source.

19. An applicant seeking to participate in the PPP Loan was required to certify that: (1) "the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient"; (2) it will use the PPP funds for covered expenses; and (3) it has not previously received a PPP loan and will not do so again before December 31, 2020. 15 U.S.C. § 636(a)(36)(G)(i)(l)-(lV). Further, the PPP provides that lenders had to consider whether the borrower (1) "was in operation on February 15, 2020," and (2) either "had employees for whom the borrower paid salaries and payroll taxes," or "paid independent contractors." Id. § 636(a)(36)(F)(ii)(ll).

20. The detailed affiliation standards contained in §121.103 do not apply to PPP borrowers, because §121.103(a)(8) provides that applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR 121.301. Federal Register/Vol. 85, No. 73/Wednesday, April 15, 2020/Rules and Regulations.

21. The SBA regulations provide that entities are to be deemed affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. Whether or not control is exercised is irrelevant, so long as the power to control exists. Control may arise through ownership, management, or other relationships or interactions between the parties. *See* 13 C.F.R. §121.301(f).

22. The affiliation rules clearly state that they "are waived for (1) any business concern with not more than 500 employees, that as of the date on which the loan is disbursed, is assigned a North American Industry Classification System ("NAICS") code beginning with 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the SBA; and (3) any business concern that receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958 (15 U.S.C. 681)."

23. On April 13, 2020, Musclemakers Inc. applied for a Paycheck Protection Program Loan through the Borrower Application Form as promulgated by the Small Business Administration in response to the Global Covid-19 Pandemic through Manufacturers and Traders Trust Company.

24. The Loan was approved on April 15, 2020 and dispersed on April 24, 2020. The SBA Loan number is 8076297101.  This loan of $394,800.00 is the subject of this petition.

25. Musclemakers submitted a PPP Loan Forgiveness Application Form 3508EZ on August 20, 2021 to its Lender which submitted their complete approval of forgiveness to the SBA on August 24, 2021.

26. Upon information and belief, on April 1, 2022, the SBA notified the Lender that it was reviewing the PPP forgiveness application, and that it was likely to deny forgiveness without additional information:

> Based on the Form 3511 whereby the lender selected a primary NAICS code 623110 and selected the employee size standard, the total employees size standard exceeded SBA's 500 limit. However, waivers for 25 of the 26 (21 paid already) was granted by the SBA. (franchises/restaurant). Loan# 8076297101 listed was not a franchise or a restaurant and based on the family exceeding the employee size standard, this loan would not meet forgiveness. This loan will not be forgiven.

27. On May 3, 2022, the SBA issued to Lender the SBA Final Loan Review Decision informing Musclemakers that it was denying forgiveness based on the below:

> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. Borrower did not meet the eligibility requirements of the Paycheck Protection Loan Program due to exceeding the eligible small business size standards. Lia et al is a consortium of 26 entities that are majority-owned (75%+) by William Lia, Sr, William Lia, Jr. Vincent Lia, and Michael Lia (Father and three sons.) All 26 entities received First draw PPP loans totaling $14,646,346 and have 1,348 employees.

28. The SBA improperly affiliated all the entities owned by the family members of Petitioner, regardless of their affiliation waivers.

29. In fulfilling its obligations under the PPP Loan program by paying out $282,007.00 of the PPP Loan proceeds exclusively for payroll, Musclemakers fulfilled Congress' intent of having the PPP Loan recipients assist in reducing much of the financial burden off of the New York State unemployment system.

30. Since it was legally mandated to be closed and thus did not benefit from keeping employees on its payroll, it received only a temporary benefit of $112,793.00 which was used for approved operating expenses and now in return is obligated to pay back the full $394,800.00.

31. The SBA decided that although the Petitioner's other entities were granted affiliation waivers for their applications that because Musclemakers was neither a franchise nor business with a NAICS code beginning with 72, that it would have to be affiliated with the other entities owned by all the family members of Petitioner.

32. Even if all of the Petitioner entities that do not fall under an affiliation waiver were considered affiliated with each other, in this case four (4) gyms and one (1) insurance agency, they would still meet the definition for a "small business concern" as combined the entities are under the threshold of 500 employees and under the monetary threshold for NAICS 713940 Fitness and Recreational Sports Centers as provided on the SBA Table of Size Standards of $15.5 Million.

33. In accordance with the law, Musclemakers timely filed its appeal on May 27, 2022, with the OHA as the application of the rules was arbitrary and capricious and a clear error of fact and law.

34. On December 6, 2022, the OHA order was filed by Administrative Law Judge John L. Shailer affirming the SBA loan review decision that the Petitioner was not entitled to PPP loan forgiveness.

35. The OHA order became a final decision thirty days later pursuant to 13 C.F.R. § 134.1211(d).

36. Petitioner now appeals the OHA Final Decision pursuant to 13 C.F.R. § 134.1211(g).

37. The Administrative Procedures Act ("APA") authorizes judicial review of federal agency actions. 5 U.S.C. § 702. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Id. § 706(2)(A), (C).

**FIRST CAUSE OF ACTION**
**(Agency Action Contrary to Law (CARES ACT, 5 U.S.C. §706(2), and 5 U.S.C. § 702)**

38. Musclemakers repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39. Pursuant to 4 U.S.C. § 706(2), this Court has the authority and shall: (2) hold unlawful and set aside agency action, findings, and conclusions found to be -- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance or procedure required by law.

40. The CARES Act provides that "[d]uring the covered period, in addition to small business concerns, **any** business concern . . . shall be eligible to receive a covered loan if the business concern . . . employs not more than the greater of (I) less than 500 employees or (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern ... operates." 15 U.S.C.A. § 636(a)(36)(D). (Emphasis added). The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the PPP Ineligibility Rule.

41. It is undisputed that Musclemakers, by itself meets the eligibility criteria for a small business under the SBA PPP criteria and would have been granted a further waiver if it was part of a Franchise chain.

42. It is further undisputed that the Senate recognized the hardship the pandemic created for gyms and fitness centers, and that Musclemakers is the exact type of small business concern the CARES Act was meant to assist.

43. Respondent's actions to fail to exclude businesses from affiliation with Musclemakers, that are a business concern with an NAISC Code starting with 72 or a franchise, due to an arbitrary application of affiliation waivers, are not in accordance with the law, including the CARES Act and the APA, and are in excess of statutory jurisdiction, authority, or limitations and short of statutory right, in violation of the CARES Act and the APA.

44. The SBA's actions here are clearly arbitrary and capricious, as other, franchised gyms have received full forgiveness of the PPP loans they received. It is arbitrary and capricious without valid reason that affiliation waiver rules are applied inequitably between franchised and non-franchised gyms.

45. This Court should therefore declare the Respondent's Final Loan Review Decision denying Petitioner's full PPP loan forgiveness as unlawful and set it aside.

## SECOND CAUSE OF ACTION
**Declaratory Judgement**

46. Musclemakers repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

47. There is an actual controversy between Plaintiff and Defendant concerning Plaintiff's full loan forgiveness under the PPP.

48. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not relief is or could be sought."

49. Respondent arbitrarily applied the affiliation waiver rules to some small business concerns and not others, resulting in the Petitioner being disparately treated as compared to other gym and fitness concerns.

50. Accordingly, Petitioner seeks a declaration that the Respondent's Final Loan Decision denying Petition's full PPP loan forgiveness was unlawful and must be withdrawn.

WHEREFORE, Petitioner prays for Judgment against Respondent as follows:

    a. For a judgment declaring the Respondent's Final Loan Review Decision unlawful;

    b. For a judgment setting aside Respondent's Final Loan Review Decision and a determination that Petitioner's full PPP amount of [amount] be forgiven;

    c. Award Petition its attorneys' fees and costs of suit; and

    d. Such other relief as this Court deems just and proper.

DATED:    February 3, 2023
               Albany, New York

                                    Respectfully submitted,

                                    THE TOWNE LAW FIRM, P.C.

By:    **s/ James T. Towne, Jr. Esq.**
        James T. Towne, Jr. Esq.
        *Attorneys for Petitioner*
        Bar Roll No.*:* 601203
        500 New Karner Road
        Albany, New York 12212-5072
        Tel. No.: (518) 452-1800
        james.towne@townelaw.com