UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MUSCLEMAKERS, INC.; MUSCLEMAKERS II,
INC.; MUSCLEMAKERS III, LLC; and
MUSCLEMAKERS V, LLC,[1]

                                                1:23-CV-0150 (GTS/DJS) (LEAD)
                     Plaintiffs,[2]      1:23-CV-0521 (GTS/DJS) (CON)
                                                    1:23-CV-0313 (GTS/DJS) (CON)
v.                                                   1:23-CV-0513 (GTS/DJS) (CON)

U.S. SMALL BUS. ADMIN., OFF. OF CAP. ACCESS,

                   Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

THE TOWNE LAW FIRM, P.C.                JAMES T. TOWNE, JR., ESQ.
  Counsel for Plaintiffs
500 New Karner Road
P.O. Box 15072

---

       [1]       Although the Complaints and Corporate Disclosure Statements in Action Nos. 1:23-CV-0313 and 1:23-CV-0513 identify the two Plaintiffs therein (i.e., "Musclemakers III" and "Musclemakers V") as being incorporated entities (i.e., followed by "Inc."), all of Plaintiffs' subsequent motion papers – as well as the administrative record filed in these actions – consistently identify these two Plaintiffs as being limited liability companies (i.e., followed by "LLC"). As a result, the Clerk's Office is directed to amend the docket sheets in those two actions, as well as in Action No. 1:23-CV-0150, so as to follow Musclemakers III and Musclemakers IV with "LLC," not "Inc." *See United States v. Edwards*, 241 F.R.D. 146, 148-49 (E.D.N.Y. 2007) (summarizing court's authority to correct caption errors *sua sponte*).

       [2]       Although the Court has been unable to find any controlling authority on the subject, it is inclined to agree with Defendant that, although Plaintiffs identify their operative pleadings as "Petitions" and themselves as "Petitioners," the proper characterization is "Complaints" and "Plaintiffs" under Fed. R. Civ. P. 3 and 4. (Dkt. No. 23.) *See also* 5 U.S.C. § 702 (stating, *inter alia*, that "[t]he United States may be named as a *defendant* in any such action . . .") (emphasis added). As a result, what Plaintiffs refer to in their motion papers as the "Petitions," "Petitioners," and "Respondent," the Court refers to in this Decision and Order as the "Complaints," "Plaintiffs," and "Defendant" (although the Clerk's Office need not make this change on the docket sheet).

1

Albany, NY 12212

HON. CARLA B. FREEDMAN                    ADAM J. KATZ, ESQ.
  Counsel for Defendant                   Assistant U.S. Attorney
U.S. Attorney for the Northern District of New York
445 Broadway, Room 218
James T. Foley Courthouse
Albany, NY 12207-2924

GLENN T. SUDDABY, United States District Judge

# DECISION and ORDER

Currently before the Court, in the four above-captioned consolidated proceedings filed by New York State Capital Region gyms and fitness centers ("Plaintiffs") pursuant to 5 U.S.C. § 702 and 13 C.F.R. § 134.1211(g) for judicial review of a final agency decision by the United States Small Business Administration ("SBA") Office of Hearings and Appeals ("OHA") denying Plaintiffs' appeal from a Paycheck Protection Program ("PPP") loan review decision by the SBA Office of Capital Access ("OCA" or "Defendant"), are the parties' cross-motions for summary judgment. (Dkt. Nos. 20, 23.)[3] For the reasons set forth below, Plaintiffs' motion is denied, and Defendant's cross-motion is granted.

## I.      RELEVANT BACKGROUND

---

[3]     The Court liberally construes Plaintiffs' Complaints and supporting brief as constituting a motion for judgment on the pleadings. (*See, e.g.,* Dkt. Nos. 1, 20.)  Because the administrative record filed in these proceedings (Dkt. No. 19) comprises "matters outside the pleadings" and has been considered by the Court, Plaintiffs' motion for judgment on the pleadings shall be treated as motion for summary judgment in accordance with Fed. R. Civ. P. 12(c).  Such a construction is consistent with Plaintiffs' brief, Defendant's consolidated opposition/motion, and Plaintiffs' consolidated reply/opposition. (Dkt. Nos. 20, 23, 24.)  *See also Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) ("Where, as here, a party seeks judicial review of agency action, summary judgment is appropriate, since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law.") (internal quotation marks omitted).

A.     **Relevant Procedural History**

In late-April of 2020, Plaintiffs each obtained first-draw Paycheck Protection Program loans from a private lender, Manufacturers & Traders Trust Company, and in August of 2021 submitted applications seeking forgiveness of those loans; however, in May of 2022 the SBA OCA denied forgiveness of those loans on the ground that each borrower, together with its affiliates, exceeded the maximum allowable number of employees and the SBA small-business size standards for such loans.  *See* MM-Inc_000001-2 (SBA's Final Loan Review Decision); MM-2_000001-2 (SBA's Final Loan Review Decision); MM-3_000001-2 (SBA's Final Loan Review Decision); MM-5_000001-2 (SBA's Final Loan Review Decision); MM-Inc_000350-56 (Affiliate Narrative); MM-2_000286-92 (Affiliate Narrative); MM-3_000723-29 (Affiliate Narrative); MM-5_000562-68 (Affiliate Narrative).

More specifically, the SBA OCA found that members of the Lia-family "consortium" (comprised of the-now late William Lia, Sr., and his three sons, William Jr., Vincent, and Michael) were majority owners of 26 businesses that received first-draw Paycheck Protection Program loans, totaling $14,646,346, and employed 1,348 individuals.  *See* MM-Inc_000001-2 (SBA's Final Loan Review Decision); MM-2_000001-2 (SBA's Final Loan Review Decision); MM-3_000001-2 (SBA's Final Loan Review Decision); MM-5_000001-2 (SBA's Final Loan Review Decision).  Moreover, the SBA OCA rendered the following findings, among others, regarding the 26 aforementioned businesses: (a) 19 entities were franchisee car dealerships with fewer than 500 employees per location, making them eligible for an affiliate waiver; (b) 2 entities were restaurants assigned NAICS-codes beginning with the number 72 (specifically, NAICS code 722513, reflecting that they were "Limited-Service Restaurants"), also making them eligible

for an affiliate waiver; (c) 4 entities (i.e., Plaintiffs herein) were non-franchisee gyms, which did not have NAICS codes beginning with 72 (each being assigned NAICS code 713940, reflecting that they were "Fitness and Recreational Sports Centers") and, thus, they were ineligible for affiliate waivers; and (d) one entity was an insurance brokerage.  *See* MM-Inc_000350-56 (Affiliate Narrative); MM-2_000286-92 (Affiliate Narrative); MM-3_000723-29 (Affiliate Narrative); MM-5_000562-68 (Affiliate Narrative).

As a result, the SBA OCA ordered Plaintiffs to repay the four loans, totaling $887,982.50. *See* MM-Inc_000001-2 ($394,800 loan); MM-2_000001-2 ($149,700 loan); MM-3_000001-2 ($181,082.50 loan); MM-5_000001-2 ($162,400 loan).

In May of 2022, Plaintiffs appealed the denials of their loan-forgiveness requests to the SBA OHA.  *See* MM_Inc._000003-13 (Appeal); MM-2_000003-14 (Appeal); MM-3_000003-14 (Appeal); MM-5_000003-14 (Appeal); 13 C.F.R. § 134.1201(b) (authorizing appeals to OHA from certain SBA loan-review decisions).

However, in early-December of 2022, the SBA OHA, through an order filed by Administrative Law Judge ("ALJ") John L. Shailer, affirmed the SBA OCA's final loan-review decisions. *See* MM_Inc._002318-27 (ALJ Decision); MM-2_000346-55 (ALJ Decision); MM-3_000821-30 (ALJ Decision); MM-5_000698-707 (ALJ Decision).

In their current Complaints seeking review pursuant to 13 C.F.R. § 134.1211(g), each Plaintiff asks the Court to set aside the SBA OCA's decision and determine that its loan should be forgiven in full.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 38-50.)

    **B.**    **Summary of Parties' Motion Arguments**

        **1.**    **Plaintiffs' Memorandum of Law-in Chief**

Generally, in their supporting brief, Plaintiffs assert four arguments. (Dkt. No. 20, at 16-36.) First, Plaintiffs argue, the OCA and OHA acted not in accordance with the law and in an arbitrary and capricious manner for the following reasons: (a) *Chevron*'s two-step deference framework compels a finding that (i) the relevant statutory language is neither silent nor ambiguous on the matter at hand but rather clearly waived the affiliation rules for Plaintiffs, and (ii) Defendant has failed to develop within the administrative record a reasoned explanation for its application of the policy choice of affiliating Plaintiffs with the 22 other companies in question; and (b) if, in fact, Plaintiffs are not eligible for loan forgiveness under the rules, then a mistake has been made by the SBA (in its formulation and promulgation of the rules) and Plaintiffs should not bear the burden of that mistake, because (i) Plaintiffs applied for the PPP loans in good-faith reliance on government representations regarding the rules, (ii) the SBA should not have approved Plaintiffs for PPP loans (if the SBA was not going to forgive those loans), and (iii) Plaintiffs would have been better off had they ignored the PPP loans offered by the federal government and laid off their workforce (and leaving their workers to rely on the New York State unemployment system). (*Id*. at 16-23.)

Second, Plaintiffs argue, the failure to grant an affiliation waiver to unfranchised gyms as was intended by Congress is arbitrary and capricious for the following reasons: (a) the congressional record shows that gyms were intended recipients of PPP loan forgiveness (and an affiliation waiver), and an agency's action or conclusion that is unsupported and contradicted by evidence in the record must be rejected as arbitrary and capricious; (b) Plaintiffs acted in accordance with the directive and purpose of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and were denied fair and equal treatment (as compared to restaurants

and bars); and (c) Plaintiffs' denial of PPP loan forgiveness is untenable when compared to blanket forgiveness for national franchises (such as Planet Fitness and Gold's Gym). (*Id*. at 24-31.)

Third, Plaintiffs argue, the SBA's affiliation determination was irrational, because (a) it was based upon an internally contradictory conclusion that Plaintiffs should be affiliated with other business entities which possessed affiliation waivers (and thus ought not to be considered a part of the relevant employee count), (b) it is contrary to a plain reading of the congressional record which makes clear that gyms and small businesses were intended to receive PPP Loan forgiveness, and (c) it causes an unfair and unjust result for Plaintiffs, who fully relied on and complied with all Frequently Asked Questions ("FAQs"), interim rules, and other information regarding the size and eligibility of the business concern as promulgated by the SBA, when they applied for the loans. (*Id*. at 31-34.)

Fourth, and finally, Plaintiffs argue, although it was an available path for Plaintiffs, they were not required to file a rule-making petition, because there is no current statutory or common law precedent compelling the filing of a rule-making petition with the SBA as an alternative for judicial relief from the SBA's decision. (*Id*. at 34-36.)

        2.        **Defendant's Opposition Memorandum of Law / Memorandum of Law-in Chief**

Generally, in opposition to Plaintiffs' motion, and in support of its own cross-motion, Defendant asserts four arguments. (Dkt. No. 23, Attach. 1, at 19-31.) First, Defendant argues, contrary to Plaintiffs' argument that the *OCA* unlawfully counted individuals employed by other businesses owned by the Lia family when assessing whether each Plaintiff was sufficiently small

to qualify for a PPP loan and forgiveness, in fact *Congress*, not the OCA, decided which entities would receive affiliation waivers. (*Id*. at 19.) More specifically, Defendant argues that the OCA reasonably determined that Plaintiffs do not qualify for PPP Loans for the following reasons: (a) Plaintiffs do not dispute the fact that the administrative record supports the OCA's finding that (based on the businesses' common ownership and identity of interest) Plaintiffs were affiliated with other businesses owned by the Lia family; (b) although Congress waived the affiliation rules for certain "business concerns" listed in 15 U.S.C. § 636(a)(36)(D)(iv), Plaintiffs are not such "business concerns" (and, even if this Court were to find that the relevant statutory language is ambiguous, Defendant must still prevail because the OCA's interpretation of the ordinary affiliation rules was reasonable); and (c) although some individual legislators may have hoped that a wider group of businesses would benefit from limited PPP funds, the text of the CARES Act governs, and Congress did not intend to waive the affiliation rules for businesses that are not listed in Section 636(a)(36)(D)(iv). (*Id*. at 19-27.)

Second, Defendant argues, Plaintiffs' policy arguments (demanding equal treatment with bars, restaurants, and SBA-recognized franchises) are no basis for their APA challenge and, in any event, lack merit for the following reasons: (a) whether extension of the affiliation-waiver to entities not specified in the text of the CARES Act (including non-franchised gyms) would have been a sound policy choice is not a valid basis for an APA claim, because, as the Supreme Court has explained, "courts aren't free to rewrite clear statutes under the banner of [their] own policy concerns"; and (b) even if SBA had authority to rewrite the CARES Act in the manner proposed by Plaintiffs (i.e., to "extend the affiliation waiver" in Section 636(a)(36)(D)(iv) to "govern gyms and fitness centers"), Plaintiffs have cited nothing that required the agency to have done so. (*Id*.

at 27-28.)

Third, Defendant argues, Plaintiffs' estoppel argument (i.e., that they should not have to pay back the loans because they would never have taken them out if they knew they would not be forgiven) lacks merit, because the Supreme Court has categorically held, in *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426-33 (1990), that the Government cannot be estopped from denying a claim for payment of public money that is not otherwise permitted by law: estoppel under such circumstances is a constitutional "impossibility." (*Id*. at 28-29.) Furthermore, Defendant argues, Plaintiffs have not established, or even alleged, that the OCA acted intentionally, or engaged in affirmative conduct, in misleading Plaintiffs such that an estoppel claim could even be entertained. (*Id*.)

Fourth, and finally, Defendant argues, Plaintiffs are not entitled to the relief they seek in the nature of an injunction, because, at the very most, the only available and/or appropriate remedy under the circumstances would be an order remanding the matter back to the SBA for further consideration of the loan forgiveness applications disputed here. (*Id*. at 29-31.)

### 3.     Plaintiffs' Reply Memorandum of Law / Opposition Memorandum of Law

Generally, in reply motion to Defendant's opposition, and in opposition to Defendant's cross-motion, Plaintiffs argue that the OCA's denial of Plaintiffs' PPP loan-forgiveness application and the OHA's decision should be overturned as arbitrary and capricious for the following reasons: (a) the OCA's determination is irreconcilable with earlier SBA determinations that allowed affiliation waivers for the car dealership franchises owned by the Lia Family and the NAICS Code 72 restaurants owned by the Lia Family; and (b) the OCA's and

OHA's determinations are arbitrary and capricious, because the determinations are contrary to the plain reading of Section 636(a)(36)(D)(iv), which does not deprive a waiver to a business concern not listed in the statute "even if [that business concern] happen[s] to share owners with businesses that are listed" (as argued by Defendant). (Dkt. No. 24, at 3-8.)

## II.     GOVERNING LEGAL STANDARDS

### A.     Administrative Procedures Act

Under the Administrative Procedures Act "(APA"), courts review agency action to determine if it is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ." 5 U.S.C. § 706(2)(A),(C); *see, e.g., Friends of Animals v. Romero*, 948 F.3d 579, 585 (2d Cir. 2020); *Diocese of Rochester v. United States SBA*, 466 F.Supp. 3d 363, 374 (W.D.N.Y. 2020).

Under this "narrow" standard of review, a "court is not empowered to substitute its judgment for that of the agency." *Friends of Ompompanoosuc v. FERC*, 968 F.2d 1549, 1554 (2d Cir. 1992) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 [1971]).

Rather, a court may overturn an agency's action only if it finds that the agency has relied on factors which Congress "has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Karpova v. Snow*, 497 F.3d 262, 267-68 (2d Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 [1983]).

The ultimate question is whether the agency has provided a reasoned basis for its action. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-15 (2009) (requiring that an agency provide a "reasoned explanation" for its action); *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (requiring that an agency supply "a reasoned basis" for its action).

### B.     Summary Judgment

When a party seeks judicial review of agency action, summary judgment is appropriate. *See Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) ("Where, as here, a party seeks judicial review of agency action, summary judgment is appropriate, since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law.") (internal quotation marks omitted). During such an inquiry, the district court's review is confined to the administrative record compiled by that agency when it made the decision. *See Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) ("Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision."). Generally, the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Essentially, "the function of the district court [during a review of agency action] is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985).

### C.     The CARES Act and PPP

The CARES Act, Pub. L. No. 116-136, 134 Stat. 281, was signed into law on March 27, 2020, to provide emergency economic assistance in the wake of the coronavirus pandemic. *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 223-24 (2d Cir. 2021). As relevant here, Section 1102 of the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program ['PPL'],' to the [SBA's] 7(a) Loan Program." 85 Fed. Reg. 20,811, 20,811 (Apr. 15, 2020) (interim final rule); *see* CARES Act, § 1102, 134 Stat. at 286 (amending Section 7[a] of the Small Business Act). "Congress authorized the SBA Administrator to guarantee PPP loans 'under the same terms, conditions, and processes' as 7(a) loans." *Pharaohs*, 990 F.3d at 224 (quoting 15 U.S.C. § 636[a][36][B]).

The CARES Act enumerates several differences between PPP loans and ordinary Section 7(a) loans. Of relevance here, Congress waived SBA's affiliation rules for certain categories of business, including for some entities that had been assigned a NAICS code beginning with 72 (i.e., businesses in the accommodation and food services industry), and those with a "franchise identifier code" (i.e., those published in SBA's Franchise Directory). More specifically, Section 1102(a) of the CARES Act provides as follows, in pertinent part:

> (iv) Waiver of affiliation rules
>
> During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations … are waived with respect to eligibility for a [Paycheck Protection Program] loan for—
>
> > (I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72 [and]
> >
> > (II) any business concern operating as a franchise that is assigned a franchise identifier code by the Administration[.]

15 U.S.C. § 636(a)(36)(D)(iv)(I)-(II) (emphasis removed). Neither the CARES Act, nor Congress's subsequent legislation, altered or amended the SBA's longstanding affiliation rules except to the extent set forth in Section 636(a)(36)(D)(iv). *See generally* CARES Act, § 1102, 134 Stat. at 286-94.

### III.   ANALYSIS

After carefully considering the matter, the Court denies Plaintiffs' motion, and grants Defendant's cross-motion, for each of the alternative reasons stated in Defendant's brief. *See, supra,* Part I.B.2. of this Decision and Order. To those reasons, the Court adds the following two points (which are intended to supplement, and not supplant, those reasons).

First, the Court agrees with Defendant that Plaintiffs focus to their detriment on the purported "intent" of Congress, arguing that to deny them forgiveness is to ignore the command of Congress. Granted, the portions of the congressional record that Plaintiffs cite may reflect that at least three Members of Congress had hoped more businesses would be eligible for PPP funding. However, the statutory text in question unambiguously instructed that the SBA waive its existing affiliation rules for those business concerns listed in 15 U.S.C. § 636(a)(36)(D)(iv) (expressly waiving SBA's affiliation rules as to those "business concern[s]" identified in the statute, which included any "franchise that is assigned a franchise identifier code by" SBA [.e., the Lia family's car dealerships] and any business with 500 or fewer employees "assigned a North American Industry Classification System [NAICS] code beginning with 72" [i.e., the family's restaurants]).[4] Non-franchised gyms are not listed in Section 636(a)(36)(D)(iv).

---

[4]   The Court notes that the success of any argument that the statutory language in question contains an ambiguity demands a construction of the language that is so muddled and/or myopic as to defy a coherent description of the ambiguity. Plaintiffs certainly have not provided

Furthermore, a "statute's legislative history cannot overcome the plain meaning of the text." *J.S. v. New York State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 38 (2d Cir. 2023).

Indeed, no extratextual materials (such as the "FAQs" cited by Plaintiffs on pages 26 and 30 of their memorandum of law)[5] can create an ambiguity about a statute's original meaning; they can only help clear up an existing ambiguity. *See McGirt v. Oklahoma*, 591 U.S. 894, 916 (2020) ("There is no need to consult extratextual sources when the meaning of a statute's terms is clear. Nor may extratextual sources overcome those terms. The only role such materials can properly play is to help 'clear up . . . not create' ambiguity about a statute's original meaning.") (citing *Milner v. Department of Navy*, 562 U.S. 562, 574 [2011]). Similarly, the Court finds

---

such a description. (*See generally* Dkt. Nos. 20, 24.) To the extent that one were to argue that an ambiguity is created by the failure to expressly identify *whose* "eligibility" is being referenced in Section 636(a)(36)(D)(iv) (stating, *inter alia*, that "the provisions applicable to affiliations . . . are waived[,] with respect to eligibility for a covered loan[,] for . . ."), the Court notes that the plain meaning of that language (when read either alone or within the broader context of the Small Business Act's Section 7[a] loan program) is best understood to be that *each subsequently listed business concern's* eligibility is being referenced (so as to imply the presence of the possessive pronoun "its" before the noun "eligibility"); the *plain* meaning of that language is not that "any otherwise-related business concern's" eligibility is somehow being referenced (so as to imply the presence of that awkward – and otherwise unreferenced – compound possessive pronoun before the noun "eligibility").

[5] (*See* Dkt. No. 20, at 30, 34 [attaching pages "26" and "30" of Plfs.' Memo. of Law].) In any event, the Court finds nothing in the "FAQ" in question cited that actually conflicts with, and/or somehow creates an ambiguity in, the express language of 15 U.S.C. § 636(a)(36)(D)(iv). *See* SBA "10 Million Cap Affiliation Rules" Answer to FAQ 23 (May 14, 2020) ("Franchise brands that have been denied listing on the Directory because of affiliation between franchisor and franchisee may request listing to receive PPP loans. SBA will not apply affiliation rules to a franchise brand requesting listing on the Directory to participate in the PPP, but SBA will confirm that the brand is otherwise eligible for listing on the Directory."), https://www.sba.com/funding-a-business/government-small-business-loans/ppp/faq/10-million-cap-affiliation-rules/ [last visited Nov. 26, 2024]. Notably, Plaintiffs admit they are non-franchised gyms and fitness centers. (*See* Dkt. No. 20, at 30 [attaching page "26" of Plfs.' Memo. of Law].)

nothing in the "interim rule" (cited by Plaintiffs on pages 7, 22, 23, and 34 of their memorandum of law) that actually conflicts with, and/or somehow creates an ambiguity in, the express language of 15 U.S.C. § 636(a)(36)(D)(iv). (*See id.* at 11, 26, 27, 34 [attaching pages "7," "22," "23," and "34" of Plfs.' Memo. of Law].)[6]

As a result, the Court finds that it was lawful for Defendant to apply its existing rules to Plaintiffs, conclude that they were ineligible for the loans they received, and, accordingly, decline to forgive them.

Second, and finally, with regard to Plaintiffs' repeated argument that the OCA's affiliation-waiver determinations with regard to them is inconsistent with its earlier affiliation-waiver determinations with regard to the Lia family car dealership franchises and restaurants, the Court perceives no inconsistency between the OCA waiving the affiliation rules for those business concerns listed in 15 U.S.C. § 636(a)(36)(D)(iv) while not doing so for those business concerns not listed in 15 U.S.C. § 636(a)(36)(D)(iv). To be clear, no admissible evidence exists in the administrative record disputing the fact that all 26 of these business entities in question were (not considering waivers) "affiliated" with one another during the time in question. *See,*

---

[6] In particular, Plaintiffs rely on two sentences contained in the "Background Information" section of the interim rule in question. *See* 85 Fed. Reg. 29847-01, 29847-48 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120) ("With the COVID–19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus. These measures, some of which are government-mandated, are being implemented nationwide and include the closures of restaurants, bars, and gyms."). However, only one of these two sentences even mentions "gyms"; and neither sentence plausibly suggests that the interim rule extends the SBA's affiliation waiver to gyms. (*Id.*) In fact, Plaintiffs repeatedly acknowledge that at no time did the interim rule actually extend the affiliation waiver to gyms and fitness centers (especially non-franchised ones). (*See id.* at 11, 26 [attaching pages "7" and "22" of Plfs.' Memo. of Law].)

*supra,* Part I.A. of this Decision and Order.[7] At issue in this action is merely whether the *consequences* of being so "affiliated" (i.e., the inclusion of a loan applicant's "affiliated" entities when determining the size of that loan applicant, also known as "the affiliation rules") may be "waived" with regard to *some* of those entities *for the purpose of (forgiving) their PPP loans* but not for *other* of those entities *for the purpose of (forgiving) their PPP loans.  See, supra,* Part II.C. of this Decision and Order (setting forth the relevant provisions of the CARES Act and PPP).  Congress has expressly provided that the affiliation rules may be, and have been, so waived (again, even though some politicians may have expressed their hopes to the contrary).

For all of these reasons, Plaintiffs' motion is denied, and Defendant's cross-motion is granted.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk's Office shall amend the docket sheets in Action Nos. 1:23-CV-0150, 1:23-CV-0313 and 1:23-CV-0513, so as to follow "Musclemakers III" and "Musclemakers IV" with "LLC," not "Inc."; and it is further

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that Defendant's cross-motion for summary judgment (Dkt. No. 23) is **GRANTED**; and it is further

---

[7] *See, e.g.,* 13 C.F.R. § 121.103(a)(1),(2) ("Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. . . .   SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists.").

**ORDERED** that the Clerk of Court shall issue a Judgment for Defendant and close this action.

Dated: December 3, 2024
      Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge